UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
)
v. )
) No. 2:23-cr-49-1
JOHN VAN VUGHT, )
Defendant. )

## INDICTMENT

The Grand Jury charges:

1. At all relevant times, JOHN VAN VUGHT was a resident of the State of Vermont, living in Northfield, Vermont.

2. At all relevant times, ValleyNet, Inc. was a non-profit entity that had a contract to operate fiber-to-the-home internet networks serving customers in east-central Vermont and Lyme, New Hampshire. ValleyNet is the "design/build/operate" partner for the East Central VT Telecommunications District, or ECFiber, a municipally owned and controlled communications union with over 30 member Vermont towns.

3. At all relevant times, Northfield Savings Bank was a bank operating in the District of Vermont, and insured by the Federal Deposit Insurance Corporation. JOHN VAN VUGHT was a customer of Northfield Savings Bank, and maintained multiple Northfield Savings Bank accounts he shared with his wife. ValleyNet was also a customer of Northfield Savings Bank, and maintained multiple Northfield Savings Bank accounts.

4. At all relevant times, QuickBooks was an accounting software package commonly used for business accounting.

1

### Van Vught's Employment by ValleyNet

5. Beginning in approximately 2010, JOHN VAN VUGHT provided ValleyNet with accounting services, including handling bank accounts, preparing payroll, and paying vendor invoices. VAN VUGHT used QuickBooks to maintain the accounting of ValleyNet. VAN VUGHT did so on a contracted basis, and not as an employee of ValleyNet. VAN VUGHT held this role at ValleyNet through early July of 2022.

6. On or about November 15, 2021, ValleyNet hired a Director of Finance. JOHN VAN VUGHT was thereafter asked to provide formal reconciliation of ValleyNet finances to the new Director of Finance.

### Northfield Savings Accounts

7. Between approximately 2010 and 2022, ValleyNet used a Northfield Savings Bank account ending in 3161 as its primary operating account. JOHN VAN VUGHT did not have signatory authority on this account, but had the ability to transfer money between ValleyNet accounts.

8. In or about April 2011, JOHN VAN VUGHT and his wife opened a Northfield Savings Bank checking account ending in 2692.

9. In or about November 2012, a Northfield Savings Bank small business checking account ending in 5687 was opened in the name of ValleyNet with the primary signatory listed as JOHN VAN VUGHT. Filed along with the opening paperwork was a corporate authorization resolution providing VAN VUGHT with complete control of the 5687 account. The 5687 account was never set up in the ValleyNet QuickBooks, and all transactions for the 5687 accounts were therefore concealed from anyone who was to review the accounting reports for ValleyNet.

10. The 5687 account received funds almost exclusively from the 3161 ValleyNet operating account. Almost all of the funds deposited in the 5687 account were transferred or otherwise deposited into JOHN VAN VUGHT's 2692 account. Some of these transfers were payments to VAN VUGHT for his accounting work pursuant to his contract with ValleyNet.

## The Scheme

11. From in or about 2013 through in or about July 2022, JOHN VAN VUGHT willfully participated in a scheme and artifice to defraud ValleyNet, and to obtain approximately $560,000 from ValleyNet accounts by materially false and fraudulent pretenses, representations, and promises.

## Manner and Means

12. It was part of the scheme that JOHN VAN VUGHT would make electronic transfers from the 3161 ValleyNet operating account to the 5687 account.

13. It was part of the scheme that JOHN VAN VUGHT would omit recording incoming transactions in the QuickBook entries for the 3161 account and/or intentionally underrepresent the amount of an incoming transaction, thereby disguising the missing funds.

14. It was part of the scheme that JOHN VAN VUGHT would electronically transfer the missing funds in the 5687 account to his personal 2692 account.

15. It was part of the scheme that JOHN VAN VUGHT would write checks from the 5687 account to himself and deposit them into his personal 2692 account.

16. It was part of the scheme that JOHN VAN VUGHT would use funds embezzled from ValleyNet to pay for his and his family's personal expenses.

17. It was part of the scheme that JOHN VAN VUGHT would obfuscate his possession of the embezzled funds by conducting financial transactions. These transactions

3

included the withdrawal and deposit of cash from VAN VUGHT's personal 2692 account, and the purchase and sale of real property in Georgia and Florida.

18. It was part of the scheme that in May and June of 2022, JOHN VAN VUGHT provided reconciliation documentation to ValleyNet's newly hired Director of Finance that contained errors that VAN VUGHT intentionally made in an effort to continue the obfuscation of the embezzlement of funds from ValleyNet.

19. It was part of the scheme that on June 23, 2022, JOHN VAN VUGHT closed the 5687 account, receiving the remaining $5.00 on deposit in the account in cash.

20. On or about each of the dates set forth below, in the District of Vermont and elsewhere, defendant JOHN VAN VUGHT, for the purpose of executing the scheme described above, and attempting to do so, transmitted and caused to be transmitted by means of wire communication in interstate commerce the following:

| Count | Date | Purpose | Type of Wire | Amount |
|---|---|---|---|---|
| 1 | June 29, 2018 | Purchase of property in Jekyll Island, Georgia | Bank Transfer from Vermont to Georgia | $181,419.41 |
| 2 | May 10, 2022 | Purchase of real property in Cocoa, Florida | Bank Transfer from Vermont to Florida | $313,992.48 |
| 3 | June 22, 2022 | Reconciliation of ValleyNet Accounts for period of January 1, 2022 to May 31, 2022 | Email | N/A |

(18 U.S.C. § 1343)

4

## Forfeiture Notice

1. The allegations of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of the offenses charged in Counts 1 through 3, the defendant JOHN VAN VUGHT shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the gross receipts obtained, directly or indirectly, as a result of such violations. The property to be forfeited includes, but is not limited to, a money judgment in the amount of $560,000 as a result of the violations.

3. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been comingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

(18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c))

A TRUE BILL

REDACTED

FOREPERSON

Nikolas P. Kerest (JAO)
United States Attorney
Burlington, Vermont
May 11, 2023